Domingo Ojeda v. the MTA. Thanks Jasmine. Jasmine, I don't think I have the right name on this thing for the last one for SIPA. Would you just check? Thank you. Counsel from Mr. Ojeda. It's been yes all along. I feel compelled to ask. May I remove my mask? Thank you. May it please the court, my name is Beck Feynman and I represent the Transportation Authority or the MTA in this case. You won below. Yes. Congratulations. Were you the trial attorney? We lost below. Were you the trial attorney? I was and my opponent prevailed at trial as a plaintiff's verdict. Oh right. The district court's opinion in order denying the MTA's motion for judgment as a matter of law should be reversed on two grounds. First the MTA should have been afforded governmental immunity against the specific theories the plaintiff Domingo Ojeda pursued and these particular theories required expert evidence in order for the jury to decide them without purely speculating. The theories are laid out in the MTA's brief so I won't repeat them here but I do want to emphasize that each of the department's decisions about how police resources should be deployed so where police officers are needed what which types of officers are needed in various locations or for various assignments. To all discretionary decisions they're all governmental functions so if the MTA had given Ojeda a car that was missing a brake and he got into an accident and was injured or let's say they issued him a bulletproof vest that didn't work and the bullet went straight through and injured him you're saying those would be discretionary decisions and he would not be able to sue? That's right your honor and in fact that is the the fact pattern of the McCormick case which is discussed in our papers. So the decision about what types of of equipment police officers need for their particular assignments requires police expertise an exercise of discretion based on all of the policy considerations that a police department takes into account in determining. I understand that with respect to a member. Excuse me you didn't put an expert evidence about the kind of equipment that these police officers should have when they were on patrol? We did not your honor because as as the court is aware part of our argument below and here is also that the plaintiff was required to put in expert evidence to demonstrate why the equipment chosen was. And since they didn't you didn't have to put in rebuttal testimony? That's that's our position yes your honor. Sorry Judge McCormick. Yes so I understand that you think that the policing is a governmental function but Goheda is not a member of the public just saying that you failed to provide an adequate protection. He's an actual employee of the government saying his employer failed to issue him adequate equipment. I mean has the governmental that seems like something that you know is a pretty common claim that an employee might make against an employer. It seems like a proprietary function. Has the governmental function immunity defense ever been used in the employer employee context? Well yes your honor. I mean so there's there's a couple of concepts here that that should be distinguished. First the the fact that he's an employee of the railroad or of the carrier only matters because if this case was brought under the FVLA and not under a different type of claim. If he were outside of the FVLA he would have brought probably a workers compensation claim. Which he was entitled to do as a as a unique feature of his collective bargaining agreement. The MTA police officers are entitled to both workers compensation and a chance to recover under the FVLA. So they they straddle both both forums. But what matters here. Okay but that's what the law provides. It's not a loophole. It's it's not a loophole so much as it is a feature of the contract that was that was negotiated between the police union the MTA Police Department Union and and the MTA. So what matters here though is that in any other context the decisions at issue and officer Chella's conduct at issue would undoubtedly be immunized. And this we're talking about the same conduct here just in a different different context. The context being a negligence claim under federal law. But it wouldn't be immunized by the defense. It would be immunized by statutes providing an exclusive remedy and workers compensation right. If this were brought by an employee against a private police department I don't even think that that that that that case would exist. I'm not sure if I'm following your honors questions. The fact that you're saying that if you brought it outside the context of the FVLA it wouldn't be allowed. But that's I mean not because of the governmental function immunity defense. I mean it just is true that an employer can sue. In fact an employee can sue the employer. I mean let's stay in the context of the FVLA. A railroad employee can sue a railroad employer for failing to issue him adequate equipment right. That is true. It's also true though. Right so like the way that you equip your employees. Is that a governmental function? It seems like that's the kind of claim you can make against private parties all the time. So I understand that if Ojeda were a member of the public who alleged that you provided inadequate police protection in an area. That's a governmental function because the action you're taking is in part for the protection of the public. But this is about an employer an employee saying that the employer failed to provide him adequate equipment. Isn't that different? There are a couple of distinctions here that have to be made. The the reason that the that the conduct would be immunized is not because the it's an employer employee relationship. The reason that it's immunized is because of the the types of decisions that are being made. The MTA is a unique it's at a unique crossroads between railroad law and municipal law. It is still a municipal entity and the fact that it is a municipal entity it should be afforded the same protections that other non-municipal or excuse me non railroad municipal police departments are afforded. The FBLA doesn't change that and and Gottschall the Gottschall case which we discussed in our papers makes that clear. Any common law doctrines and principles which were not expressly abrogated by... No I understand that argument fully and I'm assuming that the governmental function immunity defense is available. I'm just saying isn't the governmental function immunity defense available when the government has taken some kind of an action to protect the public adequately and therefore I was injured. Has it ever been applied when an employee says you as my employer have failed to provide me adequate protection to do the job that I was hired to do? Sure this would go back to the McCormick case and although that police officer had had died his estate brought the case. So it was still an employee police officer saying you should have done something at least through the state here you should have done something different to protect me should have given me different equipment. Counsel I want to talk about officer Chella. He was on a private call when wasn't he? Wasn't that the evidence? He was he was not on a private call and in fact he testified very specifically that he that both of the numbers that were accounted for in the cell phone records that were introduced as an exhibit were sent were the central dispatch. There were two different numbers for it. He was never on consistently when asked about it. I just want to be clear I do have a second argument I'd like to address. I'm also not clear about the timing. I believe I was given some extra time I just want to make sure I still have time for rebuttal. Oh yes you have two three minutes for rebuttal. Okay so officer Chella's conduct and in to your Honor's point is also entirely discretionary. These are these are split-second decisions. Well it wouldn't have been discretionary if he was making a private call while he left Mr. Ojeda with the two suspects. Arguably it still would have been discretionary. He is making a determination in the moment about where he should be positioned vis-a-vis the victim, the perpetrator, his partner, the truck with heavy weaponry in it. He's making those decisions. The fact that he is on the phone no matter who he's calling is part of his decision making. But the record here is very clear that he was not on a private call. He was calling dispatch to find out what the status was of the order of protection. Oh so let me tell you what looks like negligence to me. I mean they send these two guys out in a car in which they can't even put a anyone that they want to arrest. There's no room to put him in the car right? So they're stuck there Harrison Street Station with two people who are fighting with each other and then Sella moves away and this guy, our plaintiff, is there with the two fighting people by himself. And then one of them of course runs away, the one with the allegedly order of protection against him. Boy, that sounds like negligence toward Mr. Ojeda. Tell me why it isn't. It would be negligence on the part of every police department in the country which sends out all types of officers for routine patrol and expects officers, particularly highly trained officers such as ESU officers, to be able to detain a person who is handcuffed, by the way, rear cuffed, for a matter of minutes before before backup arrives. What's the kind of case that an MTA employee could bring against the MTA that wouldn't fall under the governmental function immunity defense in your view? What decisions are not discretionary on the part of the MTA? Well, as the cases have made clear, not everything that a police department or police officer does is discretionary. So there are clear guidelines or rules that the police officers have to abide by. There are, for instance, motor vehicle traffic, I'm sorry I'm over time but may I just finish? You can finish your answer certainly. There are motor vehicle statutes that say police officers have to have to operate their vehicles in certain ways and can't do it in other ways. If there were a violation of that and that caused an accident, then surely that would be a ministerial duty not protected by the governmental immunity doctrine. But I'm still having a hard time understanding, and I know your time is up, how they could send out these two officers in a bring in. They see troublemakers and there's no room for them in the car. That's gonna be inappropriate if not negligent or maybe both. Well, Your Honor, respectfully the MTA would disagree with that, but in addition, I know they do, in addition, it sort of makes the point here. That is exactly the type of discretionary decision-making that police departments have to do to take into account all the time in order to deploy their their resources, including people, and which the courts consistently have said should not be second-guessed in a personal injury case. So even if it was negligent, in hindsight, they could have made a different dispatch decision. The common law would still afford them immunity for that decision-making and it also speaks to why the jury should not have been allowed to pass on this question at all because we we don't know because the plaintiff didn't put in any evidence of what other police departments do, how those officers are dispatched, what the considerations are that departments take into effect, but what we do know from the case law is that those types of decisions are quintessential discretionary police function decisions which are typically immunized. Thank you, counsel. We'll hear from Domingo Ojeda. May I please? Yes. Thank you. The first thing I'm going to tell you is that I'm Philip Dinhoffer and I represent Domingo Ojeda, the plaintiff appellee. Next I'm going to tell you that there was evidence that the second phone call was made to Yonkers on a personal matter. The Mr. Cella phone call? Yes. Officer Cella testified to that and I to that fact but you weren't given the whole transcript of the trial so you wouldn't know that. So but Mr. Fineman just told me that the two calls were to the dispatch center. No, they weren't. One was to the to the dispatcher to find out about the warrants. The second call was made to Yonkers and Cella specifically testified. The record is available to you, the transcript. It was filed as a matter of fact. Is it available to the jury? The testimony was in front of the jury, yes. It's there. I've showed them in the records. I actually subpoenaed and obtained his cell phone records and it showed where the number was and I asked him what is this number and he said that was Yonkers headquarters. That was a different place than calling Central Dispatch. So it's possible that that influenced the jury which gave your client a very big award. Well my client got the award he was entitled to because the numbers were justified and aren't being challenged. That was the damages that he suffered. I mean the other aspect to this case too is the workers' compensation issue. Workers' compensation is forbidden to be mentioned in the trial of a federal employers liability act matter. The trial judges will never let it be because there is none. FELA stands as an exception to workers' compensation and the railroad workers covered by FELA do not have workers' compensation. What happened in this case is the MTA has been fighting its ability to be sued under FELA ever since they merged the two police departments between Long Island Railroad and Metro North and they provided their employees with their version of workers' compensation but there's no proper workers' compensation case. There is no jurisdiction in the workers' compensation forum and the cases will be dismissed because an employee has a FELA case. So what happens is they made a hybrid out of it whereas the typical railroad like the Long Island Railroad for example when an employee gets hurt the claims department handles the medical management and pays the bills for the railroad not workers' compensation. That's something that was negotiated through collective bargaining. The collective bargaining agreement for the police is absolutely devoid of any reference to workers' compensation. So the district court rejected the MTA's argument on government immunity and sent this case to the jury. Do you think it would be useful as opposed to reversing that verdict to send it back to the district court to think about the government immunity exception? No, there can be no concept of immunity here because then you're leaving this man without a remedy. He has no remedy, no legal right to workers' compensation because he has a remedy under FELA. That was the importance of your Green decision, the Second Circuit in Green versus the Long Island Railroad back oh I'm gonna say around 2000-2002 somewhere in that range. Specifically held that the MTA is a railroad engaged in interstate commerce. FELA cases are brought against railroads engaged in interstate commerce. They're not brought against municipal entities. They're not brought against government-owned railroads. They're brought against railroads engaged in interstate commerce and this is a matter which Congress gave the exclusive jurisdiction to the Federal Employers Act to govern. Does it make a difference that this is a police section? No, because the floodgate argument opens up. It's going to go to every other thing that's MTA owned. If the Long Island Railroad, a subsidiary corporation of the MTA now says, wait a second, they're getting immunity there. Why don't we get immunity? We're the same corporation. We're the same public authority as the MTA. If Mr. Ojeda were not employee of the MTA but were a member of the public and somebody escaped from the MTA officer's custody and injured him, he would be barred by governmental function immunity, right? No, he'd be barred by the workers' compensation laws. What? He'd be barred by workers' compensation. I'm saying if he's not an employee of the MTA, he's just a member of the public. Yeah, every employee's exclusive remedy against their employer is workers' compensation. There would be no right to... I'm saying if he's not an employee. If he's not an employee, if he's a member of the general public, that's a different story. This is a matter of exclusive... But why is it a different story? I guess my question is this. So if it's pretty clear that a member of the public who was injured because there was inadequate holding capacity in MTA security officers' police cars and somebody escaped and injured him would be barred by governmental function immunity, doesn't it seem... doesn't it seem arbitrary to then say that Mr. O'Heda himself had such a claim? No, the United States Supreme Court actually resolved this question in the Welch case. And in the Welch case, the Supreme Court actually said that in enacting the Federal Employers Liability Act, Congress evoked the intent to abrogate... You're saying... You're talking about state sovereign immunity. Yeah, but that's what this is. This is all a vestige of sovereign immunity. This all emanates from the fact that it's a state. And the other thing is, the MTA is not the state entitled to this immunity. There's decisional law that I cited in my brief on point that says that the MTA is not entitled to this kind of immunity. They're not the state of New York. But what about the police function of deciding what kind of vehicle to send these two police officers out in? Aren't they entitled to the government's immunity? They're not the government. There's decisional law on point that says they're not the government. I'm sorry. The government is the state of New York municipality proper, but it's not a corporation that's independent. A corporation that doesn't meet... there's two different tests, I forget the other's a two-step test, but the courts have held they can be used interchangeably. And the MTA was held not to meet those qualifications for immunity under those tests. I'm sorry. I understand that state sovereign immunity attaches to states, but you recognize that governmental function immunity attaches to all levels of government that perform governmental functions, right? No, I don't recognize that. I think it's a vestige of sovereign immunity. And if they're not the state, they don't have that vestige of municipal police department can never assert a governmental function immunity defense to any claim. No, municipalities have an immunity defense. That's a municipality. This is not a municipality. This is the state, and it's a corporation that was made wholly independent of the state. It's one that pays its own judgments. It's one that survives on its own and is not dependent on the state itself for its funds. But what about the police function that they have taken on to themselves, the MTA? But what happened when the railroads did it themselves? Are you saying that that police function would then be immune when it was a private corporation's police department? Because railroads all have their own private police departments too. CSX has its own police. Conrail had its own police. So this was a police function patrolling the stations, I guess. But it's not the right kind of police. Tell me why. Because there's an employee- relationship here. Again, as you were pointing out before, this is not the relationship between a member of the general public at large suing a municipal police department. This is an employer-employee relationship, and that's what Congress regulated here that was involved in interstate commerce, okay? And that's what makes this unique, and that's what makes this different. There's no dispute that FILA applies here. Your opponent never resisted that FILA applies. He just thinks that FILA doesn't preclude the governmental function immunity. But it has to, because otherwise you're leaving this man without a remedy. Listen to my question. Your opponent does not dispute that FILA applies to the MTA, does he? He did in his pleadings. He did not at trial. I'm asking you on appeal. Does he say that was a signer to that? No, he does not. Okay, so we know that FILA applies. Then the question is, does the governmental function immunity somehow have an interaction with FILA, and or is it separate, and or as Judge Banaschi had some questions about your opponent, is it more related? I'm not saying that's Judge Banaschi's position, but he probed about the question of the difference between a member of the public being injured in some way, as opposed to an employee within the department. And the issue surrounds here, whether governmental immunity and acts of discretion, etc. are, is it, you know, the difference between the government and one of its employees, and or the general public, correct? Yes, and that's the unique feature of FILA, because it's employee-employee relationships, whereas if it was any other employee-employer, if it were a member of the New York City Police Department, I don't know if they have workers' compensation or not, but they can't sue their employer directly for their work-related injury. They got to bring that 506 case, whatever it is, 503. Just to be clear, it does sound like a moment ago you were saying that even, you know, assuming that FILA applies, and assuming that the governmental function immunity defense even applies, you were saying that Mr. Ojeda would not, like Mr. Ojeda's claim, would not be subject to that defense, because he is acting as an employee of a railroad employer, and that is similar to what other railroad employers would do, even in the private sector. Exactly, exactly, and that's, again, why in your example of why there's a case here, there is no immunity. Chella wasn't where he was supposed to be. What immunity applies to that? That's just simple negligence. Thank you. Thank you, Mr. Feinman. You reserve three minutes for rebuttal. Yes, thank you, Your Honor. Brother Counsel made a few points that I think actually help the MTA's position here. One is that he referred to the MTA as a hybrid, the MTA Police Department as a hybrid organization, and that's absolutely true. That's why it should be treated differently. But it's a transportation, isn't it a transportation authority? It is a transportation authority. And isn't it subject to FILA? It is subject to FILA. So what, so what kind of hair-splitting are you doing now? Most of the other railroads in this FILA are private corporations. So if you have private police, railroad police, acting on behalf of and in the employment of a private railroad, there will be no immunity because governmental function immunity has never applied to private organizations or corporations. The MTA, however, is a governmental entity. So on the one hand... But it's a transportation authority. It is. And it's subject to FILA, as you've just said. So what are you trying to carve out? I don't understand. It's the same type of analysis that Gottschall asked us to go through. And that is, you look at the statute, what was in effect at the time, and whatever is not expressly abrogated by the statute from the common law remains intact. So for instance, there was a case that we had cited that dealt with the firefighters rule. And at one point the MTA had argued that... I think we have that argument. But the MTA doesn't get governmental function immunity just because it's a part of the government or it is part of the government. You look at the nature of the action it took to determine whether governmental function immunity applies, right? Correct. The whole point here is that it's a police... And so I guess my question here is, you might think about this as the MTA acting to protect the public, or you might think about it as the MTA issuing adequate equipment to its employees to do the job that they were hired for. The first one sounds more like a governmental function. The second one sounds more like a proprietary function. And I guess I'm asking you, because he is in fact an employee who has a claim that his employer didn't give him adequate equipment, why isn't it more like that? Why should I see it the first way instead of the second way? Because he's not simply a railroad employee being given equipment by his employer, as any other railroad employee would be. For instance, a track worker being given one type of tool as opposed to another. He is a police officer who has been... But he's a police officer working for a transportation company. Correct, but still a police officer. And police officers and these types of decisions have been treated differently. I think I asked Mr. Dienhoffer if he wasn't treated as a police officer or as an employee of the authority, and he told me the exact opposite that you're saying. We fundamentally disagree on that, and there was no evidence introduced of it below. That's why we're here in court. Yes, Your Honor, but one other thing is that the FVLA is not a workers' compensations scheme. It is not a strict liability scheme. It is a negligence statute, and that is different. So Mr. Ojeda and the other MTA police officers who want to sue under the FVLA have to live with the scheme that they have chosen to operate under, which is a negligence scheme. That was the only scheme they had. Mr. Dienhoffer said since they don't have workers' comp, this is the only way they can recover. That's inaccurate, but there's no... Well, how else could they recover? They have the ability to file for workers' comp. In fact, Mr. Ojeda did that in this case. It just wasn't an issue below because, as Mr. Dienhoffer had said, that type of evidence doesn't come into play in FVLA cases. Okay, all right. Thank you. Thank you very much. Thank you. Thank you both for good argument.